UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBERT W. PEAK, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:09CV01598 AGF |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Robert Peak was not disabled and, thus, not entitled to supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. For the reasons set forth below, the decision of the Commissioner shall be affirmed.

Plaintiff, who was born on February 7, 1963, filed an application for SSI benefits on July 9, 2007, at the age of 44, alleging a disability onset date of March 30, 2007, due to injuries resulting from a November 17, 2004 car accident, including left arm and wrist injuries, eight broken ribs, a shattered right hip, and a wound above the right knee. After Plaintiff's application was denied at the initial administrative level, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). Plaintiff and a vocational expert ("VE") testified at a hearing on March 9, 2009. By decision dated April 10, 2009, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

to perform light work with some limitations, and that there were jobs available in the national and local economy that he could perform. Plaintiff's request for review by the Appeals Council of the Social Security Administration was denied on August 13, 2009. Plaintiff has thus exhausted all administrative remedies and the ALJ's decision stands as the final agency action now under review.

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record because (1) the ALJ relied on testimony by the VE that conflicted with the Department of Labor's Dictionary of Occupational Titles ("DOT"), (2) the ALJ's RFC determination is not consistent with any examining medical source, and is inconsistent with the ALJ's own findings; and (3) the ALJ failed to specify the medical evidence that supported his RFC determination and failed to assess an RFC on a function-by-function basis.

## BACKGROUND

### Work History and Application Forms

The record indicates that Plaintiff worked as a laborer and production line worker from 1992 until the car accident on November 17, 2004, and again from March 2006 to March 30, 2007, his alleged disability onset date. Plaintiff indicated that he was able to work after the accident (as a production line worker) by having coworkers help with the heavy lifting and more demanding tasks of his job. Plaintiff noted that in his work over the years, he was required to use machines, tools and equipment, technical knowledge and skills, and complete reports. He noted that by the end of his employment, he rarely

lifted or carried more than 5 pounds. (Tr. 143-45.)

Plaintiff's earnings records show minimal earnings from 1979 through 1988. From 1989 to 1993 Plaintiff earned between approximately $11,000 and $17,000 per year at various jobs. From 1994 to 2000, Plaintiff reported earnings from several different companies, never over $3,000 per year, including three years (1997, 1998, and 1999) with no earnings. In 2001, Plaintiff was self-employed and earned $6,000. In 2002 he earned $11,000 from Ennis Paint, Inc. ("Ennis"); no earnings are shown for 2003; in 2004, Plaintiff earned approximately $16,000 from Ennis; no earnings are shown for 2005; in 2006 Plaintiff earned approximately $17,500 from Ennis; and in the first quarter of 2007 he earned approximately $5,000 from Ennis. (Tr. 129-38.)

In a Function Report dated August 13, 2007, Plaintiff described needing to alternate positions between sitting and standing. He indicated he could not play sports or walk long distances. He described needing to stand and stretch while watching television due to soreness and stiffness. He listed limitation with lifting, squatting, bending, standing, walking, sitting, kneeling, and climbing stairs. (Tr. 152-57). Plaintiff's girlfriend listed substantially similar limitations in a Third Party Function Report. (Tr. 160-67).

In a Disability Report dated July 17, 2007, Plaintiff reported fatigue, and constant pain in the arm, leg, hip and ribs. Id. He reported limitations with walking, lifting over 20 pounds, driving, sitting, stair climbing, and physical activity. (Tr. 142-43.)

**Medical Record**

On November 17, 2004, Plaintiff was airlifted to a hospital after sustaining multiple fractures and other injuries as an unrestrained passenger in a rollover vehicle crash. Plaintiff's injuries included a hip fracture, left wrist/forearm fracture and dislocation, open right thigh wound, liver laceration, multiple facial fractures, right rib fracture, and other traumas. During the next few days, Plaintiff underwent several surgical procedures. He was discharged from the hospital on December 1, 2004, to a rehabilitation facility where he remained until December 10, 2004, after which he underwent physical and occupational therapy through March 5, 2005.

On March 28, 2005, Plaintiff reported that he was in very serious pain since his last treatment, and cancelled further therapy pending his doctor appointment on March 31, 2005. (Tr. 574.) On March 31, 2005, evaluation for possible total hip replacement was recommended. (Tr. 492.) On April 4, 2005, B. Sonny Bal, M.D., recommended surgery, stating, "For sure, given the level of trauma and given the level of his knee injury, there is no way he is going to be normal. He is not going to be normal in any sense of the word. This is a salvage procedure. It requires lifetime adjustments . . . ." (Tr. 493-94.)

On June 15, 2005, Plaintiff underwent total right hip arthroplasty. He was discharged from the hospital on June 21, 2005. (Tr. 1013-23). On July 11, 2005, Dr. Bal noted that Plaintiff was ambulatory and doing remarkably well, and moved him to a cane. (Tr. 995.) Dr. Bal scheduled a one-year follow-up for June 2006. (Tr. 1028-29.) On

June 26, 2006, Phillip Tweedy, M.D., noted improvement but also noted a limp. (Tr. 510-11.)

On August 9, 2007, Mark Lichtenfeld, M.D., a family physician, evaluated Plaintiff's condition at the request of Plaintiff's attorney in connection with a workers' compensation claim Plaintiff had filed. Plaintiff reported left elbow and wrist pain, and constant right flank, hip, and thigh pain. He reported back pain when riding in a car, hip pain when standing or walking on steps, stiffness and soreness with sitting, hip and thigh pain with walking, muscle spasms, cramps, and soreness in the right leg, reduced sleep down to three hours per night, shooting pain in the left arm with lifting, wrist pain with movement, and frequent headaches. Dr. Lichtenfeld noted reduced range of motion in the upper and lower extremities, as well as reduced left grip strength, among other findings. He made over 50 diagnoses related to injuries from the November 2004 vehicle accident, involving the right and left arms, chest, hip, right leg, and liver. Dr. Lichtenfeld opined that Plaintiff was limited to sitting or standing 30 to 45 minutes at a time with allowance for altering positions between the two positions twice an hour as needed. He also opined that Plaintiff could do no squatting, kneeling, stooping, lifting more than 15 to 20 pounds at a time and ten pounds repetitively, lifting from the floor, lifting overhead, pushing/pulling more than 25 to 30 pounds, climbing ladders, stairs or inclines, walking on uneven surfaces, using of power tools with his arms, repetitive grasping or gripping with either hand, power gripping, using impact or torquing tools with his arms, or working with arms outstretched or overhead. He stated that Plaintiff was "permanently

5

and totally" disabled from his injuries and unable to compete in the open labor market. (Tr. 678-93.)

Approximately two and one half months later, on October 13, 2007, internist Raymond Leung, M.D., examined and evaluated Plaintiff in connection with his application for SSI disability benefits. He limited Plaintiff to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. Dr. Leung noted that Plaintiff reported some difficulty gripping with his left hand, but Dr. Leung found that Plaintiff could manipulate small objects with his hands fairly well, and had full motor and grip strength in his arms. Dr. Leung stated that sensation in both of Plaintiff's hands was within normal limits. He noted that Plaintiff complained of pain, but stated that Plaintiff moved fairly well during the examination. Dr. Leung stated that he believed that Plaintiff could sustain a 40-hour workweek on a continuous basis. (Tr. 559-63).

On July 29, 2008, James Doll, D.O., of Orthopedic & Sports Medicine, Inc., examined and evaluated Plaintiff at the request of the workers' compensation insurer. After an extensive review of Plaintiff's medical history, Dr. Doll found partial permanent disability of 3% as to Plaintiff's body as a whole. Dr. Doll rated Plaintiff's partial permanent disability at 2% for his left wrist, 4% for his left elbow, 2% for his right thigh, and 6% for his right hip. Dr. Doll stated that Plaintiff had reached maximum medical improvement for his car accident related injuries. He found that Plaintiff, despite reporting ongoing symptoms, was functionally capable of participating in work activities and employment in the open labor market. (Tr. 696-704.)

Also on July 29, 2008, vocational specialist Delores Gonzalez, M. Ed., interviewed and evaluated Plaintiff at the request of the workers' compensation insurer. She noted in her report (dated November 28, 2008), that Plaintiff was taking Aleve two or three times a week for his pain, and that he reported that since his injuries and surgeries, he had constant pain and could not sit for "long periods of time" as it increased pain in his right hip. But, she noted, he sat through the interview for one hour and 20 minutes before getting up. Ms. Gonzalez reviewed Plaintiff's vocational history and medical records, and found that Dr. Lichtenfeld's restrictions would render Plaintiff permanently and totally disabled from employment, but that if Dr. Doll's opinions were credited over Dr. Lichtenfeld's, Plaintiff would be capable of work (at the sedentary to medium exertional levels). (Tr. 716-37.)

On September 30, 2008, vocational expert James Israel interviewed and evaluated Plaintiff at the request of Plaintiff's workers' compensation counsel. He noted that pain forced Plaintiff to cease all work duties on March 30, 2007. He found that Plaintiff was unable to return to past work, and that Plaintiff had no transferable skills to other occupations within his physical capabilities. He found Plaintiff unable to sustain employment. (Tr. 706-14.)

**Evidentiary Hearing of March 9, 2009 (Tr. 24-69)**

At the start of the evidentiary hearing, Plaintiff's counsel noted the "significant lack of current treatment," which counsel attributed "more to [Plaintiff's] difficulty with insurance and access to health care than to [Plaintiff's] limitations. Plaintiff testified that

7

he was 46 years old, single with no children, and a high school graduate with no further education. He lived in a second-floor apartment with three friends. Plaintiff stated that he currently had no source of income and did not have any medical insurance, but had not applied for Medicaid.

Plaintiff stated that he drove approximately 50 miles per week. His stated that he returned to work at Ennis in March 2006, and worked until March 30, 2007. He testified that he stopped working because he could no longer handle the pain or working for hours "in the heat." At the time of the accident and thereafter, Plaintiff worked on the "fill line" at Ennis. Plaintiff testified that he was no longer able to perform such work, even though it did not involve lifting, because he had difficulty being on his feet all the time, which the job required.

Plaintiff testified about his jobs prior to his job with Ennis, stating that he worked "basically as a laborer," filling in where needed. Plaintiff stated that he generally woke up between 8:00 and 8:30 in the morning. He occasionally performed chores that did not involve significant lifting and or take very long. He watched TV, read the newspaper, and considered himself a sociable person, but did not belong to any clubs or organizations. Plaintiff noted that he had some trouble getting in and out of the tub when taking a shower. He did not smoke, drank only socially, and did not use any drugs. The only medication he was taking was Aleve.

Plaintiff testified that weather changes caused pain in his hip, which interfered with his sleep, and caused his wrist to become sore and sometimes numb. He rated the

8

pain at a seven on a 10-point scale, and stated that although he had taken Vicodin after his hip replacement, he was no longer taking any pain killers. Plaintiff considered his overall health to be "not too bad." He denied having any problems with depression or anxiety, and considered himself to have "above average" concentration.

Plaintiff estimated that the longest he could sit or stand at a time was 30 to 45 minutes, and the farthest he could walk was a half mile. He estimated that he could lift 10 to 15 pounds, but only with his right hand. He was able to climb stairs, but it was painful.

Upon questioning by his attorney, Plaintiff testified that he was unable to sweep, vacuum, or mop for an hour, and usually did not do his grocery shopping alone. He testified that his pain affected his concentration at times, such that he had to walk around, stretch, and then return to what he was doing. Due to the pain affecting his sleep, he also had to take an average of two one-hour naps during the day.

The ALJ resumed his questioning, and asked Plaintiff about Dr. Lichtenfeld's observations. Plaintiff testified that it was possible for him to stoop, kneel, and squat, but that he avoided doing so because it was painful. Plaintiff agreed with Dr. Lichtenfeld's assessment that Plaintiff could lift 15 to 20 pounds on a one-time basis, and 10 pounds on a repetitive basis. However, he was unsure whether he could push or pull 25 to 30 pounds, and testified that he had trouble lifting things up from the ground. He had to avoid walking on slick and uneven surfaces and was unable to use power tools with his upper extremities. He had trouble lifting his left arm above his head, but could do so

9

with his right arm.

The VE reviewed Plaintiff's work history, noting that he had held positions as a construction laborer, which Plaintiff performed as light work; assembly laborer, which Plaintiff performed as light work; and packager, which Plaintiff performed as heavy work. The ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational factors (age, education, and work experience) who was capable of performing light work, but was limited to only occasionally climbing, stooping, crouching, kneeling, or crawling; could only occasionally use ladders, ropes, or scaffolds; could only occasionally use the left upper arm or extremity for overhead work; and would not have any transferable work skills. The ALJ asked the VE whether such an individual could perform Plaintiff's last work. The VE responded that such an individual could not work as a packager as Plaintiff performed that job, but would be able to work as a packager if it were performed as light work, and that the person could also be a housekeeper or cashier.

The ALJ asked the VE a second hypothetical -- whether there existed any jobs for an individual with Plaintiff's vocational factors who could only perform sedentary work[1] with a sit/stand option; had the same limitations with regard to climbing, etc., as in the first hypothetical; and had no transferable work skills. The VE responded that such an individual could work as a security guard monitor, or as a cashier with a sit/stand option.

---

[1] Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; sitting for about six hours and standing for up to about two hours in an eight-hour workday. 20 C.F.R. § 404.1567(a).

He stated that such jobs were representative rather than exhaustive, and that they were available in significant numbers in the local and national economies.

Plaintiff's attorney asked the VE about the job classification code numbers in the DOT for jobs the VE had mentioned. The VE replied, "Well, each job is classified, and I'm not an expert on the DOT, so I, I really couldn't tell you." In response to questioning by Plaintiff's attorney, the VE testified that an individual with Plaintiff's vocational factors who needed as many as six breaks in a three hour period would not be employable. The VE also testified that such an individual, who needed to take naps up to two times per week, would not be employable.

**ALJ's Decision of April 10, 2009 (Tr. 13-23)**

The ALJ found that Plaintiff suffered from the severe impairments of status post right hip fracture, status post left elbow fracture, and status post left wrist fracture. The ALJ then determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a deemed-disabling impairment listed in the Commissioner's regulations.

The ALJ concluded that Plaintiff had the RFC to perform light work,[2] with the

---

[2] "Light work" is defined in 20 C.F.R. § 404.1567(b) as work that involves lifting no more than 20 pounds at a time with frequent lifting or carrying of up to ten pounds; and that might require a good deal of walking or standing, sitting most of the time, and some pushing and pulling of arm or leg controls. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *6, elaborates that the full range of light work requires standing or walking, off and on, for a total of approximately six hours of an eight hour work day, while sitting may occur intermittently during the remaining time; that the lifting requirement for the majority of light jobs can be accomplished with occasional,

11

exception that Plaintiff was limited to lifting and carrying only 10 pounds occasionally, and needed to alternate between sitting and standing.  The ALJ found that Plaintiff could only occasionally use the non-dominant left upper extremity for reaching, including overhead; could only occasionally climb ladders, ropes, and scaffolds; and could only occasionally stoop, crouch, kneel, and crawl.

The ALJ reviewed Plaintiff's medical history and found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment.  The ALJ noted that although Plaintiff alleged disability on March 30, 2007, the record failed to show any specific medical event that occurred on that date.  The ALJ mentioned that Plaintiff's workers' compensation claim had been settled "for a substantial amount of money."  The ALJ noted that the medical record showed only minimal treatment after Plaintiff's hip replacement surgery in June 2005, and no specific medical treatment since June 2006.

The ALJ stated that Dr. Lichtenfeld's August 2007 opinion that Plaintiff was disabled was a matter reserved for the Commissioner, and that Dr. Lichtenfeld's opinion was "simply not supported by the totality of the medical evidence."  The ALJ contrasted this with the October 2007 opinion of Dr. Leung that Plaintiff maintained the ability to climb, balance, stoop, kneel, crouch, and crawl occasionally, reach forward and overhead

---

rather than frequent, stooping; and that many unskilled light jobs are performed primarily in one location, with the ability to stand being more critical than the ability to walk.

without difficulty, and complete a forty-hour workweek.

The ALJ noted that Plaintiff had not received any specific treatment since that time, and that there was no evidence that Plaintiff had ever been refused medical treatment because of an inability to pay. In addition, the ALJ stated that Dr. Lichtenfeld's statements appeared to be intended to further Plaintiff's workers' compensation claims. The ALJ then noted that the opinions of Dr. Doll were more consistent with Dr. Leung's than with Dr. Lichtenfeld's, demonstrating that Dr. Lichtenfeld's findings "were based more on subjective complaints versus objective findings." The ALJ added that, of the physicians that had treated Plaintiff, Dr. Lichtenfeld was the only one who stated that Plaintiff was disabled or placed any specific long-term limitations on Plaintiff's ability to stand, sit, walk, bend, lift, carry, or do other basic exertional activities.

The ALJ stated that if Plaintiff's daily activities were restricted, it was "by his choice and not by any apparent medical proscription." He further elaborated that there was no documented evidence of non-exertional pain that interfered with Plaintiff's ability to concentrate, and that Plaintiff had reported that he was able to shop, wash dishes, cook, do laundry, and walk one and a half blocks while carrying groceries. The ALJ pointed out that since March 30, 2007, the alleged disability onset date, Plaintiff had not had any surgery or inpatient hospitalizations; had not been referred to a physical therapist, pain clinic or pain disorder specialist; and had not taken strong doses of any pain medication.

13

The ALJ stated that he gave no weight to the vocational expert's opinion that had been given in conjunction with Plaintiff's worker's compensation claim. The ALJ then found that Plaintiff was unable to perform his past relevant work as a construction laborer. The ALJ credited the VE's testimony that someone with Plaintiff's vocational factors and RFC could perform the requirements of representative occupations such as security guard monitor or cashier with a sit/stand option, and that such jobs existed in significant numbers in the national economy. Thus, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from July 9, 2007, through the date of the decision.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court "must review the entire administrative record to 'determine whether the ALJ's findings are supported by substantial evidence on the record as a whole." Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2011). The court "'may not reverse . . . merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted); see also Hacker v. Barnhart, 459 F.3d 934, 936 (8th Cir. 2006) (explaining that the concept of substantial evidence allows for the possibility of drawing two inconsistent conclusions, and therefore, embodies a "zone of choice," within which the Commissioner may decide to grant or deny benefits without being subject to reversal by the reviewing court).

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity that exists in the national economy in significant numbers, by reason of a medically determinable impairment that has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If so, benefits are denied. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a).

If the claimant does not have a severe impairment that meets the duration requirement, the claim is denied. If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is equal to one of the deemed-disabling impairments listed in the commissioner's regulations. If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work. If so, the claimant is not disabled. If he cannot perform his past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform other work that exists in significant numbers in the national economy, consistent with the claimant's vocational factors -- age, education, and work experience. Halverson

v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010).

**VE's Testimony**

Plaintiff argues that there is no basis for the VE's testimony regarding the number of security guard monitor or cashier jobs with a sit/stand option that existed in the national economy. Plaintiff further argues that the VE's testimony that these occupations allowed for a sit/stand option was inconsistent with the DOT. These arguments are without merit. VEs routinely testify about the number of jobs with particular restrictions that exist in the local and/or national economy. This is precisely their area of expertise. The argument that the jobs of security monitor and cashier with a sit/stand option are inconsistent with the DOT is likewise without merit. See, e.g., Bell v. Astrue, No. 4:09cv2109 TCM, 2011 WL 846179, at *3 (E.D. Mo. March 8, 2011) (describing VE's testimony that such jobs were consistent with the DOT and were available in significant numbers in Missouri and nationally); Stewart v. Astrue, No. 4:09CV0552 TCM, 2010 WL 3829380, at *3 (E.D. Mo. Sept. 23, 2010); Borden v. Astrue, No. 4:09CV1148 TIA, 2010 WL 3781992, at *2 (E.D. Mo. Sept. 23, 2010). As explained in Young v. Apfel, 221 F.3d 1065 (8th Cir. 2000), "DOT definitions of particular jobs represent only the approximate maximum requirements for each position, rather than the range. Id. at 1070 (citation omitted).

To the extent that Plaintiff is arguing that the VE in this case was not competent to testify because he expressed that he was not an expert in the DOT, this argument is also without merit. The VE's resume is included in the record (Tr. 114-16) and shows proper

qualifications. The Court interprets the VE's testimony that he was not an expert on the DOT to mean that he was not an expert on how the DOT job description numbers were derived, not that he lacked knowledge of job requirements. Plaintiff has provided no affirmative evidence, such as testimony of another VE, to dispute the testimony of the VE at the hearing, and has provided no persuasive argument or other evidence that the VE's testimony was unreasonable and could not be relied on. See Havill v. Astrue, No. C09-3031-PAZ, 2010 WL 760435, at *3-4 (N.D. Iowa March 3, 2010).

**ALJ's Assessment of Plaintiff's RFC**

Plaintiff next argues that the ALJ's RFC assessment that Plaintiff could perform light work with certain limitations is not consistent with any examining medical source, and is inconsistent with the ALJ's finding that Plaintiff could not perform his past work, which included light work. Plaintiff further argues that the ALJ erred in failing to specify the medical evidence that supported his RFC determination.

A disability claimant's RFC reflects what he can still do despite his limitations. 20 C.F.R. § 404.1545(a). The "'most important issue'" in a disability determination is whether the claimant has the RFC "to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Forehand v. Barnhart, 364 F.3d 984, 988 (8th Cir. 2004) (citation omitted). The ALJ's determination of an individual's RFC should be "based on all the evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. Krogmeier v. Barnhart, 294 F.3d

17

1019, 1024 (8th Cir. 2002) (citation omitted).

"Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007) (citing Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)).

Here the ALJ was faced with conflicting medical source opinions and chose to credit those of Drs. Leung and Doll over that of Dr. Lichtenstein. This is the prerogative of the ALJ. See Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006). It is not the Court's task to make an independent evaluation of the facts or to reverse the ALJ's holding merely because the record contains evidence that points to an alternate outcome. Travis, 477 F.3d at 1042; Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996). The Court notes that Dr. Lichtenstein is a family practitioner, whereas Dr. Doll is an orthopedist. See 20 C.F.R. § 404.1527(d) (providing that one of the factors relevant to the weight due to a medical opinion is whether the source is a specialist in the area.)

The Court concludes that Drs. Leung and Doll's medical evaluations provide sufficient medical evidence to support the ALJ's rather restrictive RFC assessment. The absence of an explicit reference to "work" in close proximity to the description of the claimant's medically evaluated limitations does not make it impossible for the ALJ to ascertain the claimant's work-related limitations from that evaluation; such explicit language is unnecessary where the medical evaluation describes the claimant's functional

limitations "with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment." Cox v. Astrue, 495 F.3d 614, 620 n.6 (8th Cir. 2007).

Here, the Court believes that the reports of Drs. Leung and Doll allow for such an understanding. The ALJ found that Plaintiff could lift up to 10 pounds occasionally. This ability is supported by, and is actually more restrictive than, the medical opinions in the record. Dr. Lichtenfeld opined that Plaintiff could lift up to 15 to 20 pounds on a one time basis and lift 10 pounds on a repetitive basis. The ALJ also found that Plaintiff required the ability to alternate between sitting and standing. This aspect of the RFC was again supported by the opinion of Dr. Lichtenfeld, and was more restrictive than the opinions of Drs. Leung and Doll. The ALJ's finding that Plaintiff could occasionally reach over head with the left arm, and only occasionally stoop, crouch, kneel, and crawl was consistent with the opinion of Dr. Leung. In addition, parts of the ALJ's RFC assessment are supported by Plaintiff's own estimates of his abilities. As noted above, Plaintiff estimated that he could sit for 30 to 45 minutes and stand for 45 minutes, but would then need to change positions, and he estimated that he could lift 10 to 15 pounds.

Plaintiff's argument that the ALJ's RFC determination is inconsistent with the ALJ's finding that Plaintiff could not perform his past light work is without merit. A finding that a claimant could not perform light work is not inconsistent with a finding that he could perform light work with certain restrictions. So too is Plaintiff's argument that the ALJ improperly failed to specify the medical evidence that supported his RFC

19

determination.  See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (explaining that simply because the ALJ does not cite specific evidence does not indicate it was not considered); Depover v. Barnhart, 349 F.3d 563, 567 (8th Cir. 2003) (holding that the ALJ need not discuss how each individual part of the RFC determination was made); Aubuchon v. Astrue, No. 4:09 CV 465 DDN, 2010 WL 2870566, at *13 (E.D. Mo. July 19, 2010) (same).  Here, the ALJ properly explained and supported his decision with evidence in the record.  Lastly, Plaintiff's argument that the ALJ failed to assess an RFC on a function-by-function basis is belied by the RFC assessment itself.

## **CONCLUSION**

In sum, the Court concludes that the ALJ was justified in relying on the VE's testimony in finding Plaintiff could not perform his past relevant work, but was capable of performing other jobs that exist in significant numbers in the national economy.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 30th day of March, 2011.